# EXHIBIT A

## DISTRIBUTION AGREEMENT

This Distribution Agreement (the "Agreement") is effective as of October 1, 2016 (the "Effective Date") and is between Alliant Enterprises, LLC ("Alliant" or the "Distributor"), a limited liability company organized under the laws of the State of Michigan, and Paragon 28, Inc. ("Paragon"), a corporation organized under the laws of the State of Colorado. Paragon and Alliant are each referred to herein as a "Party" and collectively as the "Parties". Paragon and Alliant desire that, on the terms and conditions set forth in the Agreement, Alliant be appointed as distributor of Products (as defined below) to Authorized Customers (as defined below).

DEFINITIONS:

Authorized Customers: Authorized Customers ("Customers") shall be healthcare facilities owned or operated by the United States federal government, whether domestic or international and further defined to be Veteran's Affairs facilities, military installments or training facilities, Federal Bureau of Prisons facilities, or Indian Health Services locations. In addition, Customers will include other hospitals that Paragon and Alliant mutually agree may be designated Customers.

Products: Products ("Products") shall mean commercially available products manufactured by Paragon, which shall be identified in an executed Letter (as defined below).

Price: The prices for Products will be set forth in letters to be provided by Paragon from time to time, a form of which letter is attached hereto as Schedule A (each a "Letter" and collectively, the "Letters").

**AGREEMENT:**

1. **Distributor.**

    a) Appointment. Subject to the terms and conditions of this Agreement, Paragon hereby appoints Alliant as its exclusive distributor to market and promote sales of the Products to Customers, unless otherwise specified by the Parties. Notwithstanding the foregoing, the Parties hereto acknowledge and agree that the sales representatives of Paragon or of their independent agents, as applicable, shall communicate with Customers regarding Product specifications. The Customers shall be responsible for placing Product orders with Alliant.

    b) No Additional Rights. Except for the rights to distribute the Products as contemplated in this Agreement and except as otherwise specifically provided herein, this Agreement shall, in no event, way or manner, grant to Alliant any rights with respect to Products, including, without limitation, any license of any patent, trademark or other intellectual property rights owned or controlled by Paragon or under which Paragon has rights or any right to sell to any individual, institution, or health care facility other than the Customers.

2. **Prices and Product Orders.**

    a) Price and Changes. The prices for Products will be set forth in the Letters. Paragon, in its sole discretion, may amend the prices for the Products of Paragon from time to time as herein provided. Paragon may change its prices by giving Alliant at least thirty (30) days prior notice of changes ("the Change Date"). Alliant will submit price changes to all applicable government contracting agencies within thirty (30) days of the Change Date. All orders received by Paragon prior to the Change Date will be billed at the price in effect before the change. In the case that the Customer is a federal government customer, at no time will price changes be effective if the price change has not been approved by the applicable contracting agency and those price changes are electronically available to the federal government customer. As all Products purchased by Alliant from Paragon are for resale, there will be no collection of sales tax by Paragon from Alliant.

    b) Payment. Paragon shall invoice Alliant for Products on the date of shipment. Except for sales of Products that have a delayed payment from Customers (collectively "Held A/P"), Alliant shall pay Paragon for Products shipped and invoiced within thirty (30) days following Customer confirmation of receipt of Product and invoice. All payments are to be made by check in U.S. Dollars, and payments will be made to Paragon on a weekly basis.

    c) Product Orders; Shipping Costs; Insurance. Alliant shall submit purchase orders to Paragon which shall specify the quantity of Product to be shipped to Customers. Paragon will provide Alliant with the contact information necessary

for Alliant to submit such orders by fax transmission, email, or electronic data interchange ("EDI"). Paragon will arrange transportation and delivery of Products purchased hereunder, which shall be packaged in a form suitable for commercial shipment and shall be shipped F.O.B. origin, to destinations designated in writing by Alliant. Unless the Customer pays for freight, all costs of transportation and insurance for domestic shipments shall be paid by Paragon and the cost of the Product shall be amended to reflect these additional costs born to Paragon, with the exception of special deliveries (including expedited deliveries of forty-eight [48] hours or less and international shipments) as requested by the Customer. For such special deliveries, Alliant shall be responsible for invoicing the Customers for all transportation and insurance costs that exceed regular ground costs and Paragon shall be responsible for notifying Alliant of these costs. In the case when the Customer pays for freight, Paragon shall notify Alliant of the transportation and insurance to be invoiced to the Customer. Alliant shall then invoice the Customer for that same amount.

d) Additional Pricing/Commission Provisions. The Parties hereto acknowledge and agree that the applicable Letters describe, (a) the amount Alliant will invoice the Customers for the Products, (b) the percentage that Alliant is to retain of the amount the Customers are invoiced for the Products (excluding any shipping or handling charges included on such invoices), and (c) the amount to be paid to Paragon as the price for such Products and for the shipping and handling charges, if any, paid by the Customers.

3. **Marketing and Promotions, Etc.**

   a) Marketing. Alliant shall neither market nor promote the Products to any customer other than the Customers.

   b) Advertising and Training Materials. Paragon shall provide to Alliant reasonable quantities of Paragon's advertising, marketing and training literature with respect to the Products. Alliant shall not use any materials other than the Product literature provided by Paragon to promote Products to Customers.

   c) General Conduct. Alliant and Paragon shall conduct their businesses so as to reflect favorably on Paragon, Alliant and the Products and will not engage in any deceptive, misleading, illegal or unethical business practice. Neither Alliant nor Paragon shall enter into sales transactions where it has knowledge of a related improper payment or any intent to make such a payment.

   d) Market Development. Each Party agrees to inform the other Party fully of all governmental, commercial and industrial activities and plans, which do or could, affect the sale of Products to Customers. Alliant and Paragon agree that Alliant will make every effort to maintain appropriate contracting tools which may include a FSS contract and DAPA agreement for Products; however, Alliant in conjunction with Paragon may determine that an Open Market strategy may be the best approach to the Customers. Both Parties acknowledge that the federal government desires value-added services beyond distribution services by Alliant. The Parties, from time to time, may consider endeavors beyond distribution services, including but not limited to contract manufacturing services, creation of private-labeled products or Paragon/Alliant co-branded products.

4. **Product Warranty and Return.** Paragon warrants the Products to Alliant and the Customers in accordance with the warranty set forth with the Products, unless other mutually agreeable terms are reached in writing. Schedule B and Schedule C attached hereto, respectively, outline current warranties and return policies for the Products.

5. **Regulatory Matters.**

   a) Applicable Laws. Both Parties will comply fully with all applicable laws and regulations of all competent jurisdictions with respect to the distribution of the Products. In that regard, Alliant shall comply and shall cause its sales representatives and other employees to comply in all respects with the Code of Ethics on Interactions with Health Care Professionals adopted by the Advanced Medical Technology Association, as it may be amended from time to time, as well as all federal and state health care fraud and abuse laws including without limitation the Anti-Kickback Statute, the Stark Law, the Civil Monetary Penalties Act, and the False Claims Act.

   b) Customer Complaints. Alliant shall provide Paragon with notification of any Customer complaints within two (2) business days after receipt of the complaint.

6. **Trademarks.** Alliant is hereby granted permission to use, during the term of this Agreement, the trademarks and trade names used by Paragon in connection with the Products. Such permission is expressly limited to uses as necessary for performance of Alliant's obligations under this Agreement. In particular, without limiting the generality of the foregoing, Alliant agrees not to register or attempt to register any of Paragon trademarks or trade names.

7. **Terms of Agreement; Termination.**

   a) <u>Term</u>. Subject to each Party's termination rights as set forth in this Section 7, the initial term of this Agreement shall be for the period beginning on October 1, 2016 and terminating on September 30, 2019 and will automatically renew for additional one year terms thereafter unless otherwise agreed in writing by the Parties (the "Term").

   b) <u>Termination for Specified Causes</u>. Any of the following events with respect to one Party shall permit the other Party to terminate the Agreement immediately by written notice:

      i)   By Paragon for Alliant's willful breach of sections, 2.b, 3.c, 5.a or 6;
      ii)  By either Party in the event that any of the representations contained herein regarding compliance with applicable laws and guidelines becomes inaccurate;
      iii) By either Party for any other breach of this Agreement, which is not cured within 30 days after written notice of the alleged breach which specifies same with sufficient detail;
      iv)  By either Party if the other party seeks to be declared bankrupt; or
      v)   By Paragon if Alliant intentionally sells Products to Customers other than Customers.

   c) <u>Termination by Either Party</u>. Either Party may terminate this Agreement for any or no reason, effective ninety (90) days after giving written notice of such termination to the other Party. Such termination shall not affect purchase orders outstanding as of the effective date of such termination.

   d) <u>Discontinuance of Products</u>. In the event that Paragon stops offering any Product for sale during the Term of this Agreement, then such Product will cease to be covered by this Agreement.

   e) <u>No Other Rights</u>. Both Parties expressly understand and agree that the rights of termination in this Agreement are absolute. Therefore, neither Party shall be responsible to the other for compensation, damages, or otherwise by reason of any termination of this Agreement other than for obligations which arose or events which occurred prior to the effective date of termination.

8. **Indemnity.**

   a) <u>Paragon Indemnity</u>. Paragon will indemnify and hold Alliant harmless, against any and all liability, loss, damages, cost or expenses (including reasonable attorneys' fees) hereafter incurred by Alliant as a result of: (i) an injury, illness and/or death of any person that results from any negligent or grossly negligent acts, willful misconduct, or omissions of Paragon or any breach by Paragon of the duties that it is required to perform by this Agreement, (ii) product liability causing injury to property or individuals, and (iii) infringement of any patent or trademark relating to the Product.

   b) <u>Alliant Indemnity</u>. Alliant will indemnify and hold Paragon harmless against any and all liability, loss, damages, cost or expense (including reasonable attorneys' fees) hereafter incurred by Paragon as a result of an injury, illness and/or death of any person that results from any negligent or grossly negligent acts, or willful misconduct, or omissions of Alliant or any breach by Alliant of the duties that it is required to perform by this Agreement.

   c) <u>Notice and Consent</u>.
      i) If either Party receives a written claim for damages for which such Party believes it is entitled to indemnification pursuant hereto, such Party shall promptly give notice of such possible claim to the other Party. The indemnified Party shall permit the indemnifying Party (at its expense) to assume the defense of such claim or action; provided, however, that: (i) counsel for the indemnifying Party who shall conduct the defense shall be reasonably satisfactory to the indemnified Party; (ii) the indemnified Party may participate in such defense at its expense (except as provided below in clauses (ii) and (iii)); and (iii) notwithstanding the first sentence of this section 8.c.i, the omission by the indemnified Party to give notice as provided herein shall not relieve the indemnifying Party of its indemnification obligation except to the extent that such omission results in a failure of actual notice to the other Party and the indemnifying Party is damaged as a result of such failure (and in such case, the indemnifying Party shall be relieved only to the extent of such damage.) Except with the prior written consent of the indemnified Party, the indemnifying Party shall not, in the defense of any such claim or action, consent to entry of any judgment or enter into any settlement that provides for injunctive relief or other non-monetary relief affecting the indemnified Party or that does not include as an unconditional term thereof the giving by each claimant or plaintiff to such indemnified Party of a release from all liability with respect to such claim or action; provided, however, that if the settlement is for money damages only, and the indemnifying Party pays such damages in full, the indemnifying

   Party shall have the right to settle the claim without the consent of, but with notice to, the indemnified Party as long as the indemnified party receives a release from all liability with respect to such claim or action, and as long as there is no admission of guilt or responsibility on the part of the indemnified Party, and the settlement will not adversely impact upon the conduct of the indemnified Party's business thereafter.

   ii) The indemnified Party will assist the indemnifying Party in every reasonable manner requested in the investigation and defense of the claim or action. If the indemnifying Party takes charge of the defense of any claim or action, it will have no obligation to pay any expenses of the indemnified Party in connection with the investigation, defense or settlement thereof, except such reasonable expenses as are incurred by the indemnified Party as a result of assisting the indemnifying Party in the investigation, defense or settlement thereof at the indemnifying Party's request.

   iii) In the event that the indemnifying Party does not accept and continue the defense of any matter as provided above, the indemnified Party shall have the full right to defend any such claim or action, and shall be entitled to settle or agree to pay such claim or action in full without the consent of the indemnifying Party, and the indemnifying Party shall be liable for all costs and expenses incurred by the indemnified Party, as well as for the amount of the settlement or claim paid.

   d) Survival. The provisions of this Section 8 shall survive the expiration or sooner termination of this Agreement.

9. **Miscellaneous.**

   a) Assignment. The rights and obligations of either party under this Agreement may be assigned or delegated in whole or part without prior written consent of the other Party.

   b) Force Majeure. If performance of this Agreement or any other obligation is prevented, restricted or interfered with by reason of fire or other casualty or accident; labor disputes; unavailability of or delays in procuring materials, power or suppliers; war or other violence; terrorism; any governmental or intergovernmental law, order, proclamation, regulation, ordinance, demand or requirement; or any other act or condition whatsoever beyond the reasonable control of the affected party, such party shall be excused from such performance to the extent of such prevention, restriction or interference.

   c) No Waiver. Failure on any occasion by either Party to enforce any terms of this Agreement shall not prevent enforcement on any other occasion.

   d) Insurance.

      i) Alliant Insurance. During the entire Term of this Agreement (or longer as specified below), Alliant will maintain the following insurance coverages and provide certificates of insurance with Paragon shown as certificate holder: (a) Worker's Compensation insurance as required by the laws of the state in which work is being performed subject to statutory limits and Employer's Liability insurance with a limit of at least $1,000,000 each accident and each employee/policy limit for bodily injury by disease. Such insurance will include a waiver of subrogation in favor of Paragon; (b) Commercial General Liability insurance, including coverage for Products / Completed Operations, with limits of at least $1,000,000 for each occurrence and $2,000,000 annual aggregate. Such insurance will name Paragon as an additional insured; (c) Automobile Liability insurance with a combined single limit of at least $1,000,000 each accident. Such insurance will name Paragon as an additional insured; (d) employee theft & dishonesty (i.e., fidelity) insurance coverage, including third party coverage, with a limit of at least $1,000,000 for claims arising from fraudulent or dishonest acts on the part of Alliant or any Alliant employee providing services under this Agreement; (e) errors and omissions (i.e., professional) liability insurance coverage with a limit of at least $1,000,000 for each occurrence / annual aggregate. If any such insurance is written on a claims made basis, such insurance must be subject to a retroactive date that precedes the effective date of this Agreement and Alliant will be obligated to maintain such coverage subject to such retroactive date, or purchase an extended reporting period (i.e., tail coverage), if necessary, for a period of at least three years (3) following the end of the Term of this Agreement.

      The above insurance will not be canceled or the coverage hereunder reduced except by the payment of claims. In the event of any cancellation or change to the coverages set out herein, Paragon shall receive written notice within three (3) business days of such event. Failure of Alliant to maintain insurance as set out herein will constitute a material breach of this Agreement and will subject the Agreement to termination pursuant to the provisions set out

       in Section 7 above. Paragon will be provided with a certificate or certificates for all insurance policies required above. If Alliant is required to indemnify Paragon per the terms of this Agreement, Alliant's insurance will be primary to and shall not contributory with any insurance maintained by Paragon. If any person or entity to be assigned to Paragon is a subcontractor of Alliant, Alliant will furnish Paragon, upon request, with evidence that Alliant's insurance covers such subcontractor or that such subcontractor of Alliant maintains the same types and level of insurance as that required of Alliant. Alliant will be responsible for and will bear the risk of loss of or damage to any property of Alliant. Alliant will require each of its subcontractors that may enter upon the premises of Paragon or its affiliates maintain the insurance required by this provision. In no event will an insurance requirement of this provision be deemed to limit the liability or responsibility of Alliant or any of its subcontractors.

    ii) Paragon Insurance. Paragon shall provide Alliant with a certificate of liability insurance of at least $1,000,000 for each occurrence against claims for personal injury, death or property damage arising out of the Products, and shall name Alliant as an additional insured. Such insurance will include a waiver of subrogation in favor of Alliant.

e) Credit Card Transactions. Alliant will process all credit card transactions and will pay the associated fees.

f) Confidentiality. Paragon and Alliant each acknowledges that all technical, financial, pricing and commercial information previously or hereafter possessed by it concerning the business of the other including, but not limited to, information relating to manufacturing or marketing methods and plans, financial plans and records, and arrangements or negotiations with Customers of, or others having significant dealings with, the other Party hereto, the existence and terms and conditions of this Agreement, and any and all other information of a Party that is not in the public domain or generally known in the industry, and such other information as either Party may designate in writing to the other as being confidential, shall be deemed to be confidential information and shall be maintained by it and its employees in confidence at all times during the term of this Agreement, and for a period of five (5) years after this Agreement has expired or been terminated for any reason, except to the extent necessary for the commercialization of the Products.

g) Relationship of Parties. This Agreement shall not be construed to create between the Parties hereto the relationship of principal and agent, joint-venturers, co-partners, employer and employee, franchisor and franchisee or any other similar relationship, the existence of which is hereby expressly denied by each Party. Neither Party shall have any authority to bind the other, and neither Party shall be liable to any third party in any way for any engagement, obligation, contract, representation or transaction or for any negligent act or failure to act of the other. Both Parties agree to indemnify and hold the other Party harmless for any violation of this paragraph.

h) Notices. All notices and consents hereunder shall be in writing and shall be deemed to have been properly given and to be effective on the date of delivery if delivered in person, by one or two-day courier service or by facsimile transmission to the respective address or facsimile number provided below, or to such other address or facsimile number as either Party shall designate by written notice to the other in such manner:

    i) If to Paragon:

        4B Inverness Ct. E, Ste 280
        Englewood, CO 80112
        Attention: Lee Rosenthal
        Facsimile: (888) 728-1220

    ii) If to Alliant:

        333 Bridge Street NW, Suite 1125
        Grand Rapids, MI 49504
        Attention: Robert W. Taylor
        Facsimile: (269) 629-5770

i) Audit Rights.

    i) Scope of Audit. Alliant must permit Paragon or a third-party auditor appointed by Paragon to conduct an audit of Alliant's books and records relating to orders, invoices, sales reports, credit card orders, and discounts regarding the sale of Products under this Agreement and sale of Products to Alliant's customers.

ii) <u>Reimbursements</u>. If any audit reveals any underpayment to Paragon, Alliant must immediately pay to Paragon any underpayment due to Paragon as well as reimburse Paragon for all costs and expenses incurred in conducting the audit. If any audit reveals any overpayments to Paragon, then Paragon must immediately refund this overpayment to Alliant.

j) <u>Made in America Certification</u>. Paragon by the execution of this Agreement certifies that all Products are U.S.-made or designated country end products.

*[Remainder of page intentionally left blank]*

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Effective Date set forth above.

Paragon 28, Inc.

By: _____
Lee Rosenthal, VP National Accounts

Address:
4B Inverness Ct. E, Ste 280
Englewood, CO 80112

Alliant Enterprises, LLC

By: _____
Robert W. Taylor, Manager

Address:
333 Bridge Street NW, Suite 1125
Grand Rapids, MI 49504

## Schedule A: Letters

August 19, 2016

Alliant Enterprises, LLC
333 Bridge Street NW, Suite 1125
Grand Rapids, MI 49504

**RE: Paragon 28, Inc. Participation Letter**

Reference is made to the Distribution Agreement (the "Agreement") effective as of October 1, 2016, between Alliant Enterprises, LLC ("Alliant"), a limited liability company organized under the laws of the State of Michigan, and Paragon 28, Inc. ("Paragon"), a corporation organized under the laws of the State of Colorado. All capitalized terms not defined herein will have the definitions as set forth in the Agreement.

The Customers are to be invoiced for Products using standard open market pricing as determined by Paragon and its independent agents, plus shipping charges where applicable, with any discounts from such pricing to be mutually agreed upon by Alliant and Paragon. The standard percentage to be retained by Alliant will equal 10.0% of the amount invoiced to Customer, excluding any shipping or handling charges included on such invoices. The remaining 90.0% of the invoiced amount will be paid to Paragon in accordance with the terms of the Agreement.

Very truly yours,

Paragon 28, Inc.

By: _____

Print Name: Lee Rosenthal

## Schedule B: Warranties

## Schedule C: Return Policies

ANY ACCEPTABLE AND RESALABLE PRODUCT RETURNED TO PARAGON 28, INC. WILL BE SUBJECT TO A 20% RESTOCKING FEE WHICH FEE SHALL BE ASSESSED AND RECERTIFIED UPON RETURN.

## Schedule D: Description of Services

As the exclusive distributor of Customer's products to the federal market, Alliant will perform services which may include, but are not necessarily limited to:

Market development
- Training sales partners on how to sell successfully and legally within the federal market.
- Providing data resources including facilities lists, construction schedules, and key contracting/facility contacts.
- Providing ongoing relationship support and interaction with established key federal contacts.
- Developing materials supporting acquisition strategies, including sole sourcing justifications.

Opportunity to cash value stream management
- Establishing and managing an "order opportunity pipeline", including regular interaction with sales management and representatives.
- Performing sales analyses, and providing strategic consulting on appropriate contract and non-contract acquisition strategies (FSS, Open Market, Set Aside, Sole Source, DAPA, BPAs, etc.).
- Conducting daily opportunity analysis and bid board searches.
- Developing quotes and providing pricing review and support, in conjunction with sales representatives.
- Providing customer service support including call center, order management, and problem resolution, from solicitation to final payment.

Customer service and compliance
- Processing credit card transactions, where required.
- Providing contract compliance and support, from solicitation through contract close-out.
- Developing, monitoring, and providing sales tracings, performance metrics, and reporting.